UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION



**************************************************************************
```
                                    *
KEVIN FOTI and VIOLA FOTI,          *         CIV 06-4152
                                    *
            Plaintiffs,             *
                                    *
                                    *      MEMORANDUM OPINION
      -vs-                          *          AND ORDER
                                    *
ROGER GERLACH, in his official and  *
personal capacities; McCOOK COUNTY  *
SHERIFF'S OFFICE; SHELDON           *
BUTZKE and JAMES WAHLE,             *
                                    *
            Defendants.             *
                                    *
```
**************************************************************************

The following motions are pending before the Court: Plaintiffs' Motion for Punitive Damage Hearing (doc. 95), Plaintiffs' Motion to Dismiss Kevin Foti (doc. 97), Motion for Summary Judgment filed by defendants Sheldon Butzke and James Wahl (doc. 91), and Motion for Summary Judgment filed by defendants Roger Gerlach and McCook County Sheriff's Office (doc. 99).

## BACKGROUND

Plaintiffs brought this civil rights action against the McCook County Sheriff's Office and McCook County State's Attorney, Roger Gerlach, pursuant to 42 U.S.C. § 1983. State law claims of conversion and negligence are asserted against defendants Butzke and Wahl. Plaintiffs also allege that defendants Gerlach, Butzke and Wahle conspired to deprive Plaintiffs of their property without due process of law. Defendants filed motions for summary judgment.

In their response to the McCook County Defendants' Motion for Summary Judgment, Plaintiffs say they have no objection to the Court granting summary judgment in favor of the McCook County Sheriff's Office and in favor of Gerlach on the official capacity claims against him. Based on these representations, the Court will grant defendants' motion for summary judgment as

to the McCook County Sheriff's Office and the official capacity claims against Gerlach. Plaintiffs also moved to dismiss Kevin Foti as a Plaintiff. Defendants do not object to dismissal of Kevin Foti if the dismissal is with prejudice. The Court finds that dismissal with prejudice is appropriate as to plaintiff Kevin Foti.

Defendants submitted statements of undisputed material facts in support of their motions for summary judgment, and Plaintiffs responded. Very few objections were made by Plaintiffs to the facts stated by Defendants, and the Court will recite those undisputed facts below, taking into consideration Plaintiffs' objections. That said, the facts viewed in the light most favorable to Plaintiffs are: Immanuel Lutheran Church of Canova, South Dakota ("the Church") is a South Dakota nonprofit corporation. Wahle served on the board of directors ("Board") of the Church as Treasurer from January 2003 until January 2006. During this same time period, Butzke served on the board of directors as Deacon.

In June of 2005, it was determined that the Church's steeple was in need of repair. The Church decided to accept bids for the repair project. During the process, a member of the Church called Kevin Foti and asked him to submit a bid for the job. Following this request, Kevin Foti and his wife, Viola Foti, submitted a written bid on behalf of their construction company, KVP Construction. The KVP Construction bid originally indicated a price of $18,821.52. Plaintiffs' bid was the lower of two bids received. The Church met with Plaintiffs to discuss their bid, and the price was negotiated to $17,302.51. This amount was memorialized on the final bid sheet. The bid sheet did not reflect all of the terms agreed upon by the parties. For example, the parties understood that the target completion date would be the end of July 2005. Plaintiffs represented to the Church that they needed the full contract price to be paid so that they could begin work on the project. Thus, on June 26, 2005, Wahle wrote a check on behalf of the Church to KVP Construction in the amount of $17,302.51. Plaintiffs deposited the check into their bank account on June 27, 2005. On June 28, 2005, Plaintiffs brought some material and rental equipment to the Church. Between that date and July 4, 2005, Plaintiffs spent approximately 8-12 hours obtaining materials, unloading materials, and marking grids on the steeple.

On July 4, 2005, Kevin Foti was arrested in Hanson County, South Dakota, and charged with ingestion of methamphetamine. He suffered a psychotic breakdown as a result of ingesting methamphetamine and was hospitalized for four days. Kevin Foti left the hospital against his doctor's orders on July 7, 2005. He tore his IV out and left in a smock walking down the street. He was arrested again that same day. Kevin Foti was bailed out of jail on July 8, 2005, and spent the next week sick at home. On July 15, 2005, Kevin Foti went to Des Moines, Iowa, to stay with his sister and to get well. On July 26, 2005, Kevin Foti was rearrested when his drug charge was upgraded from a misdemeanor to a felony. He was transported back to South Dakota on that date and remained incarcerated, first in jail and then in the State Penitentiary, until October 2, 2006. Kevin Foti did no work on the Church project after July 4, 2005.

On July 6, 2005, two days after Kevin Foti's initial arrest, the Plaintiffs' bank account was completely emptied and closed. The Fotis did not return to the Church to work on the project during the remainder of July 2005, nor did they return during August or September. At some point in July, the Board received information suggesting the Kevin Foti had been arrested on drug charges. At some point in August 2005, the Board determined that Plaintiffs' trailer and materials, which had been left on the job site, should be moved for safekeeping. Plaintiffs deny that safekeeping was the only reason the materials were moved. Viola Foti now believes that the Church might have moved the trailer and the materials so she could not take them from the site. The trailer and materials were taken to defendant Butzke's farm. According to Defendants, the trailer and materials were stored in a shed for safekeeping. Viola Foti believes the Church also stored the trailer and materials to keep her from taking them.

Because no work was being accomplished on the project, Wahle attempted to contact Plaintiffs by phone approximately twenty times without success. Viola Foti claims that she contacted Roger Gerlach in July or August of 2005 to tell him that she intended to perform the contract. She and her lawyer had a meeting with defendant Wahle in September 2005 and they agreed she would have until November 2005 to finish the project. In November 2005, Viola Foti and Wahle discussed completion of the project. Butzke moved the trailer back to the Church and

Viola Foti came back for one day in November of 2005 to work on the steeple. She was at the job site for approximately two hours before leaving again. Viola Foti denies that she abandoned the trailer in November 2005, but asserts that she left her trailer at the Church in November 2005 because she was afraid criminal charges would be filed against her if she took it home. In any event, the trailer was left at the Church in November 2005. In late November or early December 2005, Butzke returned the trailer and materials to his shed for safekeeping. Viola Foti thinks the trailer and materials might have been moved to stop her from taking them.

In April of 2006, no additional work had been done on the Church and the Board decided to return the materials to the lumberyard for a refund. Butzke took the materials back to the lumberyard and received some money which was placed in the Church's general fund. At the request of the Board, Butzke then returned the trailer to the Church and placed it underneath a wooded area for protection. In April 2006, neither Butzke nor Wahle was on the Board and neither defendant had any part in the decision-making process at that time.

Because the Church was out a great deal of money, the Board reported the situation to local authorities. After meeting with several Church members, Gerlach filed charges against Plaintiffs for Grand Theft (SDCL 22-30A1) and Theft by Deception (SDCL 22-30A-3(1)). The first written demand made by Plaintiffs for the return of the trailer was in a June 27, 2006 letter from Viola Foti's lawyer to Gerlach. At the end of June 2006, Gerlach told Wahle that he thought the Church could keep the trailer. Viola Foti was ultimately acquitted of the criminal charges following a court trial on July 20, 2006. Gerlach later dropped the charges against Kevin Foti.

On July 28, 2006, after Viola Foti's acquittal, Plaintiffs filed a theft report with the McCook County Sheriff accusing the Church of stealing their trailer. In August of 2006, Sheriff Mike Norris called Butzke to inquire about the trailer. Butzke informed the Sheriff that the trailer was at the Church and that the Fotis were free to get it. Plaintiffs took possession of the trailer in August 2006.

In addition to addressing the defendants' statements of material fact, Plaintiffs have filed an Affidavit of Viola Foti ("Affidavit") in opposition to the defendants' motions for summary judgment. Defendant Gerlach asserts that much of the information in the Affidavit is inadmissible hearsay which a party may not rely on in opposing summary judgment. Defendants Butzke and Wahle challenge the Affidavit to the extent that it contradicts Viola Foti's sworn deposition testimony, contains unsupported speculation and beliefs, and sets forth conclusions of law. The Court has carefully reviewed the Affidavit. Evidence in the Affidavit which would be admissible at trial, which is not already set forth above, and which is properly considered for summary judgment purposes, will be stated here: During July of 2005, Viola Foti saw her banker, Jeff Arends. He told Viola Foti to contact Roger Gerlach because he was considering filing criminal charges against the Fotis. At the end of July or at the beginning of August 2005, someone broke the lock off of the trailer and moved it without Viola Foti's knowledge or permission. Viola Foti asked a friend, Scott Abis, to retrieve the trailer from the Church but it was not there when he arrived. Viola Foti then called Gerlach and assured him that the project would get finished. On August 15, 2005, Gerlach filed theft charges against Plaintiffs. Mike Fink represented Viola Foti in the criminal case. He advised Viola not to have any contact with Church members because of the criminal charges filed against her. When Viola Foti met with her lawyer and Wahle on September 16, 2005, they agreed that the theft charges would not be pursued if Plaintiffs were able to perform the contract by November 1, 2005. That agreement was later ratified and approved by Gerlach.

In October 2005, Viola Foti pleaded guilty to misdemeanor drug charges in Hanson County and the Hanson County State's Attorney drafted a proposed Judgment of Conviction that required her to repay the Church. On November 18, 2005, a preliminary hearing was held in the McCook County theft case against Viola Foti. The charges were later dismissed for lack of probable cause. On February 27, 2006, a preliminary hearing was held in the McCook County theft case against Kevin Foti, and the case was later dismissed for lack of probable cause. Gerlach then presented the case to the Grand Jury, and the Fotis were indicted on April 11, 2006. Prior to her criminal trial, Voila Foti paid the Church $1,700 because Gerlach told Fink, Viola's lawyer, that the Church steeple project had been completed by another contractor. Viola Foti said she would have kept the $1,700

and finished the project had she known that Gerlach "lied" about the project being completed by another contractor.

After she was found not guilty in the McCook County theft case, Viola Foti filed a written offense report with the McCook County Sheriff alleging that her trailer had been stolen. (She had spoken with the Sheriff about the issue on two occasions prior to submitting the written report.) Viola Foti also filed a written complaint with the South Dakota Attorney General's office that alleged theft of her trailer, conspiracy to commit theft, obstruction of justice and malicious prosecution. After she filed the two complaints, Defendants revealed the location of the trailer to the Sheriff at the end of August 2006. Viola Foti asserts in her Affidavit that the trailer was damaged while in Defendants' possession, and that some of the materials on Plaintiffs' trailer which were returned to the lumberyard in April 2006 were not purchased with money from the Church and were for other KVP Construction projects.

## DISCUSSION

A.    Summary Judgment Standard

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment shall be entered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED.R.CIV.P. 56(c). In ruling on a motion for summary judgment, the Court is required to view the facts in the light most favorable to the non-moving party and must give that party the benefit of all reasonable inferences to be drawn from the underlying facts. *AgriStor Leasing v. Farrow*, 826 F.2d 732, 734 (8 th Cir. 1987). The moving party bears the burden of showing both the absence of a genuine issue of material fact and its entitlement to judgment as a matter of law. FED.R.CIV.P. 56(c);*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986).

Once the moving party has met its burden, the non-moving party may not rest on the allegations of its pleadings but must set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists. Fed. R. Civ. P. 56(e); *Anderson,* 477 U.S. at 257; *City of Mt. Pleasant v. Associated Elec. Co-op., Inc.*, 838 F.2d 268, 273-74 (8th Cir. 1988). Rule 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

B.   <u>Defendant Gerlach</u>

Under 42 U.S.C. § 1983, Plaintiffs may seek a civil remedy against "any person who, under color of any [state law], subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws . . . ." 42 U.S.C. § 1983. Plaintiffs allege that Gerlach violated their civil rights in a number of ways. They assert that he mishandled evidence and tried to help defendants Wahle and Butzke recover the Church's money or get the steeple project finished, using the trailer as bargaining leverage. Gerlach is also alleged to have erroneously advised Church members that they could keep Plaintiffs' trailer and use it as a set-off against the money paid to Plaintiffs by the Church. Generally, the first step in assessing a section 1983 claim is to identify the contours of the underlying right said to have been violated. *See Graham v. Connor*, 490 U.S. 386, 394 (1989). The Court will address this along with the question of Gerlach's qualified immunity.

1.   Absolute Prosecutorial Immunity

A prosecutor enjoys absolute immunity for acts performed in initiating a prosecution and in presenting the State's case. *Reasonover v. St. Louis County Mo.*, 447 F.3d 569, 579-580 (8th Cir. 2006) (internal quotations omitted). "Functions intimately associated with the judicial phase of the criminal process as opposed to investigative police work or administrative duties are absolutely shielded from liability under section 1983 claims." *Id.* (internal quotations omitted). "Immunity is not defeated by allegations of malice, vindictiveness, or self-interest."     *Id.* at 580.   Even if a

prosecutor "knowingly present[s] false, misleading, or perjured testimony, or even if he with[holds] or suppresse[s] exculpatory evidence, he is absolutely immune from suit." *Id.* However, "administrative duties and those investigatory functions that do not relate to an advocate's preparation for the initiation of a prosecution or for judicial proceedings are not entitled to absolute immunity." *Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993). For example, if a prosecutor undertakes some action normally performed by a detective or a police officer like planning and executing a raid on a suspected weapons cache, he "has no greater claim to complete immunity than activities of police officers allegedly acting under his direction." *Id.* at 273-74. The Eighth Circuit has explained, however, that "[n]ot all of an advocate's work is done in the courtroom. For a lawyer to properly try a case, he must confer with witnesses, and conduct some of his own factual investigation." *Reasonover*, 477 F.3d at 579-80. Thus, a prosecutor may have absolute immunity for actions taken outside the courtroom.

In their brief, Plaintiffs claim that Gerlach was functioning outside his role as prosecutor when he: (1) failed to produce the contract between KVP Construction and the Church in Viola Foti's criminal trial; (2) tried to conceal the contract from Kevin Foti and his criminal defense attorney; (3) falsely reported to Viola's criminal defense attorney there was no written contract between the Church and KVP Construction; (4) advised defendant Wahle, at the end of June 2006, to keep the trailer as a "set off"; (5) informed Viola Foti's criminal defense attorney the trailer would not be returned and failed to produce legal authority for keeping the trailer; (6) violated the ethical rules and falsely reported to Viola Foti's criminal defense attorney that the Church repairs had been completed by another contractor; (7) gave civil advice to defendant Wahle regarding possession of the trailer so it could be used as a set-off for any money owed the Church; (8) conspired with defendant Wahle or defendant Butzke to keep the trailer in violation of Viola Foti's property rights and her procedural due process rights; (9) prevented the Sheriff from conducting an investigation regarding the theft of the trailer; (10) worked with defendant Wahle to get a result for the Church; (11) negotiated and acted as the civil attorney for defendant Wahle or the Church. (Doc. 117 at 21-22.)

Despite Plaintiffs' claim to the contrary, many of the actions listed by Plaintiffs are directly associated with Gerlach's criminal prosecutions of Plaintiffs. These include the allegations in (1), (2), (3), (5), (6). Dealing with evidence and conferring with defense counsel in the criminal cases clearly falls within a prosecutor's role as an advocate engaged in the judicial phase of the criminal process, and this conduct is protected by absolute immunity. *See, e.g., Villasana v. Wilhoit*, 368 F.3d 976, 979 (8th Cir. 2004) (prosecutor has absolute immunity from *Brady* damage claim under section 1983 when acting in an official capacity); *Taylor v. Kavanagh*, 640 F.2d 450, 453 (8th Cir. 1981) (prosecutor's activities in the plea bargaining context warrant absolute immunity). Plaintiffs' other numbered allegations against Gerlach will be addressed in the following section on qualified immunity.

2.      Qualified Prosecutorial Immunity

The conduct asserted by Plaintiffs in (4), (7), (8), (10) and (11) relates to Gerlach working with or talking to Church members about the criminal investigation and charges against the Fotis, or giving Church members advice about the Fotis' trailer. In (9), Plaintiffs contend that Gerlach prevented the Sheriff from conducting an investigation into the theft of the trailer. This alleged conduct is not integral either to a decision whether to institute a prosecution or to the conduct of the judicial proceedings. Thus, if Gerlach is entitled to immunity for these actions, it would be only qualified immunity.

Prosecutors retain qualified immunity for acts which are outside the scope of their direct prosecutorial duties. *See Brodnicki v. City of Omaha*, 75 F.3d 1261, 1266 (8th Cir. 1996). "Qualified immunity shields government officials from suit unless their conduct violated a clearly established constitutional or statutory right of which a reasonable person would have known." *Liebe v. Norton*, 157 F.3d 574, 577 (8th Cir.1998) (citation omitted). The doctrine serves as "an entitlement not to stand trial or face other burdens of litigation. . . ." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). The Supreme Court has established a two-part test for determining whether a law enforcement officer is entitled to qualified immunity. *See Reasonover* , 447 F.3d at 580 (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). Under this test the court must first ask whether the facts,

taken in the light most favorable to the non-moving party, show the prosecutor's conduct violated a constitutional right. *See Reasonover*, 447 F.3d at 580. If there is no violation, the prosecutor is entitled to qualified immunity. *Id.* If there is a violation, the court must go on to determine whether the right was clearly established. *Id.*

The constitutional rights which Plaintiffs contend were violated by Gerlach's dealings with the Church members are their "due process and property rights." The Fourth Amendment protects against unreasonable seizures of property. *Soldal v. Cook County*, 506 U.S. 56, 61-62 (1992). A seizure of property occurs when "'there is some meaningful interference with an individual's possessory interests in that property.'" *Id.* at 61 (quoting *United States v. Jacobsen*, 466 U.S. 109 (1984)). Plaintiffs claim that Church members unlawfully seized their trailer and remained in possession of it for some time after the initial taking. Plaintiffs also claim that Gerlach worked together with the Church members to allow them to keep the trailer. In his reply brief, Gerlach says that Plaintiffs have "completely failed to explain" how their allegations, even if true, constituted a violation of their constitutional rights. Plaintiffs' submissions, however, make it clear that the totality of Gerlach's acts are alleged to have been a pretext to either get the Church steeple project done by Plaintiffs, or to get some money from the Plaintiffs to the Church if the Plaintiffs failed to complete the project. Plaintiffs assert that Gerlach, acting in concert with Church members, used his state authority to keep their trailer out of their possession and to make demands on them to pay the Church or complete the project. Taken in the light most favorable to Plaintiffs, the facts alleged indicate that Gerlach's conduct interfered with Plaintiffs' possessory interest in their trailer and violated their constitutional right to be free from unreasonable seizure of property.

The Court must go on to determine whether the right was clearly established. It is well-settled that a seizure carried out without judicial authorization is per se unreasonable unless it falls within a well-defined exception to this requirement. *See Dixon v. Lowery*, 302 F.3d 857, 862 (8th Cir. 2002). No exception to this requirement has been shown. Not only was there no judicial authorization for the claimed conversion of the trailer and its contents, the Church had no security interest nor statutory right to the trailer and its contents. Gerlach does not challenge the established

law. For these reasons, Gerlach is not entitled to qualified immunity for the conduct asserted by Plaintiffs in (4), (7), (8), (10) and (11) relating to Gerlach working with the Church members or giving Church members advice about the Fotis' trailer, and in (9) regarding his contact with the Sheriff in allegedly preventing the Sheriff from investigating the theft of the trailer.[1]

    C.    <u>Defendants Butzke and Wahle</u>

In addition to the conspiracy claim discussed above, Plaintiffs assert state law claims against Butzke and Wahle for conversion and negligence. Butzke and Wahle argue that they are entitled to summary judgment on all claims because they have statutory immunity from suit as volunteers pursuant to 42 U.S.C. § 14503 and SDCL 47-23-29.[2] The Court agrees. The federal Volunteer Protection Act, 42 U.S.C. § 14501, et. seq., provides in relevant part: "[N]o volunteer of a nonprofit organization or governmental entity shall be liable for harm caused by an act or omission of the volunteer on behalf of the organization or entity if ... the volunteer was acting within the scope of

---

[1]In the alternative, *Watertown Equip. Co. v. Norwest Bank Watertown*, 830 F.2d 1487 (8th Cir. 1987), should be considered. There the summary judgment for the attorney who represented the repossessing bank was reversed and remanded for a factual determination on whether or not Attorney Green was a state actor for § 1983 purposes. In the present case, Attorney Gerlach was acting in two capacities, one as a prosecutor and the other as someone allegedly giving advice and assistance on a civil matter to Church members. In light of *Watertown Equip. Co. v. Norwest Bank Watertown*, there would be a factual issue as to whether or not Gerlach was a state actor where he was assisting and advising the Church on a civil matter. It does seem, however, that once the facts are set forth at trial, it would be a law question as to whether or not Attorney Gerlach was a state actor for § 1983 purposes when he was advising and helping the Church on a civil matter when he was also involved as a prosecutor on related criminal matters. To suggest that there can be no potential for § 1983 liability under those alleged facts would suggest that prosecutors who give advice and other assistance on tangentially related civil matters have immunity also as to the civil matters. Prosecutorial immunity and qualified immunity are, and should be, broad, but are not that all-encompassing.

[2]The federal volunteer immunity statute contains an express preemption provision. *See* 42 U.S.C. § 14502. Section 14502 preempts inconsistent state laws, unless the state law provides additional protection from liability to volunteers for nonprofit organizations or governmental entities, or the state enacts a statute, citing the authority of section 14502, electing not to be subject to the federal statute. Plaintiffs do not contend that South Dakota has enacted a statute electing not to be subject to the federal statute, and the Court's search of South Dakota statutes revealed none.

the volunteer's responsibility in the nonprofit organization or governmental entity at the time of the act or omission ..." and "the harm was not caused by willful or criminal misconduct, gross negligence, reckless misconduct, or a conscious, flagrant indifference to the rights or safety of the individual harmed by the volunteer. . . . " 42 U.S.C. § 14503(a).  "Volunteer" for purposes of the act is defined as "an individual performing services for a nonprofit organization or a governmental entity who does not receive ... compensation ... or ... any other thing of value in lieu of compensation. . . ." 42 U.S.C. § 14505(6).  The act defines nonprofit organization as "any not-for-profit organization which is organized and conducted for public benefit and operated primarily for charitable, civic, educational, religious, welfare, or health purposes and which does not practice any action which constitutes a hate crime." 42 U.S.C.  § 14505(4)(B).  The Church falls within the definition of a nonprofit organization.

In order for the defendants' motion for summary judgment to be granted there must be no material issue of fact as to whether the defendants were volunteers, working for a nonprofit organization and acting within the scope of their responsibilities.  To establish those facts, the defendants have offered into evidence deposition testimony of Butzke and Wahle in which they state that they are volunteers for the Church, that they have never received compensation for any of the services performed on behalf of the Church, and that at all times alleged in the Complaint they were acting in their capacities as volunteers for the Church.  Plaintiffs have failed to offer any evidence to dispute this sworn testimony.  Plaintiffs simply argue that the men were not volunteers after they were off the Board and no longer participating in the Church's decision-making process.  Plaintiffs cite no authority for this proposition.  The fact that some actions were taken after their terms on the Board had expired does not alter their status as volunteers for the Church.  Accordingly, Butzke and Wahle are immune from liability if harm was not caused by "willful or criminal misconduct, gross negligence, reckless misconduct or a conscious, flagrant indifference to the rights or safety of the individual harmed by the volunteer." 42 U.S.C. § 14503(a)(3).

In response to Defendants' argument that there are no facts suggesting Butzke and Wahle acted with willful or criminal misconduct, Plaintiffs allege legal conclusions but no facts.  They

assert that Defendants had no legal authority to move the trailer, sell the materials or keep the trailer. Defendants do not deny that they took the actions alleged by Plaintiffs. Rather, Defendants assert that they had legal authority to do so. The Court has carefully examined the record for facts and inferences which, viewed in the Plaintiffs' favor, would create a genuine issue whether defendants Butzke and Wahle acted with willful or criminal misconduct, gross negligence, reckless misconduct, or a conscious, flagrant indifference to the rights or safety of Plaintiffs. There is no inference in the record that Butzke or Wahle thought they were doing something wrong or that they had any interest in the trailer other than to keep it safe or maybe use it as a set-off for the money paid to Plaintiffs for the steeple project. Moreover, there is evidence inconsistent with misconduct by these defendants. For example, Wahle met with Viola Foti and her criminal lawyer in September 2005 to discuss how she could get the project done and avoid the criminal charges for taking the Church money. As a result of that meeting, the Church gave Viola until November 2005 to complete the project, and the trailer was returned to the site in November. Unfortunately, no work was done and Viola Foti again left the trailer at the Church. In June or July, 2006, prior to Viola's criminal trial, Gerlach told Wahle he thought the Church could keep the trailer. No one asked the Church members to return the trailer and no one advised them to do so. When the Sheriff called Butzke about the trailer in August 2006, after Viola Foti's acquittal on the theft charges in July, Butzke told the Sheriff that the trailer was at the Church and that the Fotis were free to get it. To this day, defendants believe they had a legal right to keep the trailer.

Viola Foti's belief and speculation that Butzke and Wahle wanted to hide the trailer and materials to keep her from getting them is not enough to avoid summary judgment. She sets forth no specific facts which would support her belief. Rule 56(e) requires that specific facts be set forth showing there is a genuine issue for trial. Speculation or conjecture is not enough to defeat summary judgment. *See Moody v. St. Charles County*, 23 F.3d 1410, 1412 (8th Cir. 1994) (allegations must be substantiated with "more than mere speculation, conjecture, or fantasy" to avoid summary judgment).

For these reasons, Butzke and Wahle have met the requirements for immunity under the Volunteer Protection Act and they are entitled to summary judgment. Accordingly,

IT IS ORDERED:

(1) That Kevin Foti's Motion to dismiss, doc. 97, is granted, and Kevin Foti is dismissed as a plaintiff from this action with prejudice.

(2) That the Motion for Summary Judgment by Defendants Roger Gerlach and McCook County Sheriff's Office, doc. 99, is granted as to McCook County Sheriff's Office and denied as to Roger Gerlach in his individual capacity.

(3) That the Motion for Summary Judgment by Defendants Sheldon Butzke and James Wahle is granted, doc. 91.

(4) That the caption in this case is amended as follows:

VIOLA FOTI,

       Plaintiff,

vs.

ROGER GERLACH,
in his individual capacity,

       Defendant.

Dated this ___ day of May, 2008.

BY THE COURT:

Lawrence L. Piersol
United States District Judge

ATTEST:
JOSEPH HAAS, CLERK

BY_____
(SEAL)    DEPUTY